United States District Court
Southern District of Texas
ENTERED

JUN 0 7 2010

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FERNANDO MORALES, as representative of FISH & SHRIMP, INC., d/b/a TINO'S SEAFOOD, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-10-76 |
| CITY OF SOUTH PADRE ISLAND, BOARD OF ADJUSTMENTS & APPEALS; PAUL FEDIGAN; and JAY MITCHUM, | § § § § § | |
| Defendants. | § § | |

## ORDER & OPINION

BE IT REMEMBERED that on June 4, 2010, the Court **DENIED** Plaintiff Fernando Morales, as representative of Fish & Shrimp, Inc., d/b/a Tino's Seafood's ("Tino's Seafood") Amended Application for Temporary Restraining Order and/or Injunctive Relief. Dkt. No. 9.

Plaintiff filed suit in the 138th Judicial District Court for Cameron County, Texas on April 12, 2010. Dkt. No. 1, Ex. 2, at 6. Plaintiff's complaint alleges that Tino's Seafood is a Texas corporation which operates a restaurant in the City of South Padre Island, Texas ("South Padre"). *Id.* South Padre's Code of Ordinances includes a Chapter regulating the display of commercial signage within the city. Dkt. No. 9, Ex. 2 (City of South Padre Island, Code of Ordinances, Chapter 15 ("Chapter 15")). Plaintiff alleges that as a result of South Padre's enforcement of Chapter 15, it has been prohibited from passing out free food samples to walking traffic in front of its restaurant, changing the color scheme to its side of the shopping center where the restaurant is located, and placing artist-drawn representations of the food served at its restaurant in all of the windows of the building to attract walking traffic to the building. Dkt. No. 1, Ex. 2, at 8. Plaintiff alleges that Defendants City of South Padre

Island, Board of Adjustments and Appeals ("Board of Adjustments"); Paul Fedigan ("Fedigan"), a member of the Board of Adjustments; and Jay Mitchum ("Mitchum"), an employee of the South Padre Public Works Department, committed fraud and negligent misrepresentation in encouraging Tino's Seafood to open a business on the island, representing that it could paint the building as it wished and promote its restaurant, but failing to disclose that the city code prohibited the use of "normal signs or fairly typical signage"[1] to promote Tino's Seafood. *Id.* at 9. Plaintiff also alleges that Chapter 15 violates its First Amendment right to free speech. *Id.* at 8. Plaintiff requests that the Court void Chapter 15 in its entirety or the unconstitutional parts therein, and also issue a declaration that Plaintiff is not required to abide by Sections 15-3, 15-4, 15-5, 15-6, 15-7, 15-8, and "et.al" [sic]. *Id.* at 6.

## Summary of Arguments

Plaintiff filed its amended application for a temporary restraining order and/or injunctive relief on May 12, 2010. Dkt. No. 9. Plaintiff argues that (1) it will suffer immediate and irreparable injury if Defendants are not restrained from enforcing Chapter 15, including the prohibition on the use of "normal signs or fairly typical signage", *id.* at 2; (2) relief is necessary to preserve the status quo of its restaurant remaining open, because it will be forced to close the restaurant if Chapter 15 is enforced, *id.*; (3) not allowing it to properly advertise its business during the tourist-heavy summer season will result in the loss of huge revenues, *id.* at 6; (4) it has no adequate alternative remedy at law, *id.* at 3; (5) there is a substantial likelihood that it will succeed on the merits of its case, because the Ninth Circuit has struck down regulations on commercial speech when that speech was not content neutral and when other more narrowly tailored methods were available, *id.* at 3-4 (citing Ballen v. City of Redmond, No. 04-35606, 04-35758, 2006 WL 2640537 (9th Cir. Sep. 15, 2006)); (6) because the regulation analyzed in *Ballen* sought to encourage a pleasing aesthetic

---

[1] This is the Plaintiff's coined term for the signage it wishes to display. This phrase does not appear within the text of Chapter 15.

environment, attract investment and improve pedestrian and traffic safety, just like Chapter 15, South Padre's ordinance should also fail scrutiny under a First Amendment analysis of speech regulation, *id.* at 3-4; (7) it believes it will prevail because its signs are not misleading, South Padre's regulations are overly constrictive, there are less restrictive ways to advance South Padre's interests, and Chapter 15 is more extensive than necessary to serve the governmental interest, *id.* at 5; (8) the Plaintiff's potential harm outweighs the cost of declaring portions of the city ordinance temporarily unenforceable, because it will not cost money to implement, South Padre will not lose revenue or tourism as a result, and it would not adversely affect the public interest, *id.*; and (9) it is willing to post a bond. *Id.*

Defendants respond that (1) Plaintiff has presented no evidence in support of its motion that demonstrates that advertising cannot be effective within the constraints of the city ordinance, Dkt. No. 12, at 2; (2) businesses throughout the island operate successfully under the same constraints, *id.*; (3) the Supreme Court has held that mere loss of income falls short of the type of irreparable injury necessary for a preliminary injunction, *id.* at 3 (citing Sampson v. Murray, 415 U.S. 61, 91-92 (1974)); (4) Plaintiff has failed to show a substantial likelihood it could prevail on the merits because South Padre has a substantial interest and a legal right to regulate traffic safety and aesthetics, *id.* (citing Lindsay v. City of San Antonio, 821 F.2d 1103 (5th Cir. 1987)); (4) as long as the city has a reasonable basis for believing that a restriction of commercial speech directly advances the governmental interest at issue, courts will not disturb that decision, *id.* (citing Paradigm Media Group, Inc. v. City of Irving, 2002 U.S. Dist. LEXIS 14133 (N.D. Tex. 2002)); (5) Chapter 15 is narrowly tailored to reach South Padre's interest in traffic safety and aesthetics because it does not regulate signs visible only inside a business, but only window signs displayed through a window that can bee seen from the front property line or right of way line, *id.* at 4-5; and (6) granting a preliminary injunction would cause enormous harm to the city by threatening its recognized right to regulate its interest in traffic safety and aesthetics.

*Id.* at 5.

Plaintiff replies that (1) it wishes to focus its request for a temporary restraining order or preliminary injunction solely on the parts of Chapter 15 which regulate the number and size of window signs allowed for a building in relation to the building's linear feet per street side, Dkt. No. 13, at 2; (2) the Court must balance aesthetics versus business growth, *id.* at 2-3; (3) other cities, like Harlingen and Dallas, have struggled to balance business interests with aesthetics, *id.*; (4) despite Defendants' insistence that this is a traffic safety issue, much more obtrusive signage, including "image signs", where products are displayed to the street through windows, are permitted, and no automobile accidents have occurred as a result, *id.* at 3; (5) restauranteurs do not have the ability to use image signs because their products are not easily displayable through windows, and thus they are discriminated against by Chapter 15, *id.* at 4; and (6) a restauranteur should be allowed to display pictures or products on its windows, as is traditionally done by other restaurants throughout Cameron County, and there is no reason why a business should be limited to one image on one window like under Chapter 15, *id.* at 4.

## Standard

Plainitff seeks a temporary restraining order ("TRO") pursuant to Federal Rules of Civil Procedure 65 or a or preliminary injunction. The standards governing a request for a preliminary injunction and a temporary restraining order are the same. Sanchez v. Federal Bureau of Prisons, No. 3:05-CV-2376-K, 2005 WL 3555465 *1 (N.D. Tex. Dec. 19, 2005). To be entitled to injunctive relief, the individual seeking relief must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999). Defendant must prove all four elements in order to prevent the denial of the motion. *Sanchez*, 2005 WL 3555465 at *1.

## Analysis

First, the Court will consider whether the Plaintiff has shown a substantial likelihood of success on the merits of its claim. Although the Plaintiff has at various times made wide-ranging claims of fraud and negligent representation, it requests that the court focus analysis of its request for injunctive relief solely on whether Chapter 15 of South Padre's Code of Ordinances, and in particular, Section 15-5(N), Section 15-6(B)(6), and the incorporated Table 15-3A of Chapter 15, which regulate the number and size of window signs allowed for a building in relation to the building's linear feet per street side, violates Plaintiff's First Amendment protections of commercial speech. Specifically, Plaintiff argues that it has been prohibited from having an artist draw visual renderings of its menu items on more than one of the windows facing the street side of its building in South Padre. Dkt. No. 1, Ex. 2, at 8. Neither party disputes that Chapter 15 as it is currently enacted prohibits such renderings. *Id.* at 9.

Plaintiff's evidence in the record consists of (1) the Plaintiff's written letter to Defendant Board of Adjustments requesting a review of the denial of a waiver to it by South Padre of the application of Chapter 15 to Tino's Seafood, Dkt. No. 1, Ex. 2, at 13-15; (2) articles from local newspapers discussing the business climate in Harlingen, Texas, and South Padre, Dkt. No. 13, Ex. 1, 11; (2) a diagram that appears to be part of the City of Dallas sign ordinance, Dkt. No. 13, Ex. 2; (3) copies of Chapter 15, Dkt. No. 1, Ex. 2, at 16-36; Dkt. No. 9, Ex. B; Dkt. No. 13, Ex. 10; (4) photographs of other restaurants located in Cameron County, Texas, but outside of the city limits of South Padre that utilize the type of sign that Plaintiff wishes to use, Dkt. No. 13, Exs. 3-9, (5) an affidavit of Fernando Morales ("Morales"), owner of the Tino's Seafood franchise on South Padre, in which he states that (a) the South Padre store's sales are 10% of what other Tino's Seafood restaurants in other cities in the Rio Grande Valley are producing, (b) Tino' Seafood is unable to generate foot or drive-by traffic because he cannot display larger and more numerous signs in his store's windows, (c) people cannot tell Tino's Seafood's half of the shopping center it shares from the strip mall's other tenant, a store selling t-shirts, (d) when a state court temporary restraining order

was in place, his sales increased immediately, (e) without using his store windows Tino's Seafood is unable to efficiently advertise, (f) because most of Tino's Seafood's sales are made during the summer, if a temporary restraining order is not in place its business will suffer irreparable harm; (g) other South Padre establishments are allowed to operate bungee jumping facilities and visitors are allowed to wear bikinis and swimsuits on the street which are more distracting; and (h) other restaurants outside South Padre are allowed to use the same signage, Dkt. No. 9, Ex. 3; (6) photographs of the interior and exterior of Tino's Seafood, which indicate that the exterior has both a pole mounted sign advertising the menu items offered and their prices, as well as a building mounted sign displaying the restaurant's name and logo, *id.*; (7) another affidavit of Morales, in which he states that (a) Mitchum encouraged him to choose his current location over another one he preferred, (b) he was told by several people he would be able to advertise, paint the building, and use signs and banners, and (c) he was prevented from handing out free food samples to walking traffic in front of the restaurant and in his parking lot, painting the building, and displaying the signs that he wishes to display, *id.,* Dkt. No. 1, Ex. 2, at 37-40.

In analyzing whether the Plaintiff is likely to succeed on the merits of this claim, the Court applies the four-part test of Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981), as originally set forth in Central Hudson Gas & Elec. Corp. v. Public Service Comm'n, 447 U.S. 557 (1980), for determining the validity of government restrictions on commercial speech:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial government interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia,* 453 U.S. at 507 (citing *Central Hudson,* 447 U.S. at 563-66).

First, both parties agree that Tino's Seafood's proposed signage neither attempts to advertise unlawful activity nor is in any way misleading. Therefore, the proposed signage is subject to at least some protection under the First Amendment. It is also

6

undisputed that the regulation is content-neutral. Although the applicable section of Chapter 15 applies only to commercial signs in windows, Plaintiff does not contend that the regulation impermissibly discriminates between the content of the signs, but only that the types of signs available to it are inapplicable to a restaurant. Therefore, the Court turns next to the remainder of the *Central Hudson* test.

To succeed on the second prong of the test, the Plaintiff must present evidence that the regulation does not seek to implement a substantial governmental interest. In this case, Chapter 15 explicitly states that its purpose is to encourage the effective use of signs as a means of communication, maintain the city's aesthetic environment and the city's ability to attract economic development and growth, improve pedestrian and traffic safety, minimize the adverse effects of signs on nearby public and private property, and enable the fair and consistent enforcement of community standards. Dkt. No. 9, Ex. 2, at 1. Texas courts have consistently held that the state may legitimately exercise its police powers to advance the substantial governmental goals of aesthetics and traffic safety. *Lindsay*, 821 F. 2d at 1108-09 (citing City of Los Angeles v. Taxpayers for Vincent ("*Vincent*"), 466 U.S. 789, 805 (1984); *Metromedia*, 453 U.S. 490, 507-08); *see also* Brewster v. City of Dallas, 703 F. Supp. 1260, 1265 (N.D. Tex. 1988). The Courts have uniformly held that it is within the constitutional power of a city to attempt to improve the city's appearance and to improve traffic safety. *See id.* The Plaintiff fails to present any evidence disputing that Chapter 15 implements a substantial government interest. Therefore, the Court finds that the Plaintiff has failed to carry its burden of showing a substantial likelihood that it will succeed in proving that Chapter 15 does not implement a substantial governmental interest.

Next, the Court considers whether Chapter 15 furthers South Padre's stated governmental interests. The Court must not substitute its own judgment about aesthetics for that of the body charged with making aesthetic determinations. *Lindsay*, 821 F.2d at 1109. Furthermore, the Court should not require full achievement of the city's stated goals rather than "furtherance" of a governmental purpose to justify a

particular restriction on speech. *Id. (*citing *Vincent*, 466 U.S. at 805). The case law makes clear that a city is not precluded from curing only some of its visual blight. *Id.* (citing *Vincent*, 466 U.S. at 811 ("Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the City's appearance"); *Metromedia*, 453 U.S. at 531-32)). However, the Court is allowed to consider whether there is such a large number of signs in a particular area that an ordinance banning a type of signage will have only an inconsequential effect, and thus, that the ordinance does not "further" the interest in aesthetics. *Id. (*citing *Vincent*, 466 U.S. at 811-12).

Here, the Plaintiff has failed to present any evidence that the ordinance does not further the City's aesthetic interest. Plaintiff has not presented evidence that the regulation has little or no effect on furthering South Padre's interest in increasing aesthetics and traffic safety. Although Morales's affidavit states that the city is failing to regulate all potential sources of visual blight and decreased traffic safety, Dkt. No. 9, Ex. 3, this is insufficient to show that Chapter 15 does not further South Padre's stated purpose. Therefore, the Court finds that the Plaintiff has failed to carry its burden of proving that Chapter 15 does not further South Padre's stated governmental interests.

Finally, the Court will consider whether the Plaintiff has proven that it is reasonably likely to succeed in proving that Chapter 15 reaches further than necessary in regulating commercial speech. The Court will consider whether the regulation is "substantially broader than necessary to protect the City's interest in eliminating visual clutter." *Vincent*, 466 U.S. at 808. Under such an analysis, the Supreme Court has approved the absolute ban on posted signs by a city, holding that in banning the signs, "the City did no more than eliminate the exact source of the evil it sought to remedy." *Id.* at 808. The Supreme Court has also approved the ban by a city of off-site billboard advertising, while still permitting on-site advertising on the same property. *Metromedia*, 453 U.S. at 509-10. And the Fifth Circuit has held that a ban on portable

signs is not "substantially broader than necessary" to protect the City's aesthetic interest. *Lindsay*, 821 F.2d at 1111.

The Court holds that Chapter 15's regulation of certain size and certain quantities of window signs is not sufficiently broader than necessary to protect the City's aesthetic interest. As *Vincent* held, "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places ... a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Vincent*, 466 U.S. at 812 (citations omitted). In the instant case, there are ample methods of communication that are available as alternatives to large and numerous window signs and artistic renderings. While Morales stated in his affidavit that there is no other cost-effective alternative to advertise his business, nothing in the record indicates that window signs are a uniquely valuable or important mode of communication or that Plaintiff's ability to effectively communicate is threatened by ever-increasing restrictions on speech. Other alternative methods of communication are available to the Plaintiff. Plaintiff's argument that this Court should apply the Ninth Circuit's decision in *Ballen* ignores that *Ballen* turns on an issue of whether the city's sign regulations were impermissibly content-based. 466 F.3d at 743-44. The Plaintiff has not made a content-based argument in this case, and Chapter 15 does not discriminate based on content with regard to window signs. Finally, even if *Ballen* were applicable to this case, it is not controlling Fifth Circuit precedent. When directed by this Court to address case law that was both binding on the Court and relevant to the issues at hand, the Plaintiff declined to do so. *See* Dkt. No. 8. Therefore, Plaintiff has failed to show that he is likely to succeed on the merits of his claims.

Because the Plaintiff has failed to prove the first essential element necessary to show entitlement to injunctive relief, the Court need not consider the remainder of its arguments.

## Conclusion

Therefore, the Court **DENIES** Plaintiff Fernando Morales, as representative of

Fish & Shrimp, Inc., d/b/a Tino's Seafood's ("Tino's Seafood") Amended Application for Temporary Restraining Order and/or Injunctive Relief.  Dkt. No. 9.

DONE at Brownsville, Texas, on June 4, 2010.

Hilda G. Tagle
United States District Judge